**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

_____

NANCY QUINTANA,


     Plaintiff,


    vs.                                   1:24-cv-00053-KWR-JMR

NEW MEXICO DEPARTMENT
OF TRANSPORTATION


     Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT NEW MEXICO DEPARTMENT OF TRANSPORTATION'S MOTION FOR SUMMARY JUDGMENT

THIS MATTER comes before the Court on Defendant New Mexico Department of Transportation's (NMDOT) Motion for Summary Judgment (**doc. 26**).  Defendant seeks summary judgment on both counts.  Plaintiff has filed no response to date, despite being ordered to do so.  **Doc. 35.**  Having considered the applicable law and the briefing, the Court finds that Defendant's motion is **well taken** and is therefore **GRANTED**.

### BACKGROUND

The undisputed facts before the Court are as follows: Plaintiff has been employed with the NMDOT in various positions since 2004, most recently in a position with the Construction Division of NMDOT District Six in 2018. **Doc. 26 at ¶1**.  In 2019, she filed discrimination claims against the NMDOT with its Employee Relations Board ("ERB") and with the New Mexico Human Rights Bureau ("HRB"), alleging discrimination on the basis of age, disability, and retaliation (*hereinafter* the "2019 Charge").  **Id. at ¶¶2–5.**  Plaintiff did not inform anyone at NMDOT that her internal complaint was based on racial discrimination, nor does she recall telling anyone at the HRB.  **Id. at ¶6.** Ultimately, both the HRB and NMDOT dismissed the complaints.

1

*Id.* **at ¶¶ 7–8.**  Lisa Vega ("Vega"), the District Engineer for NMDOT District Six, was aware of the 2019 Charge, and assisted NMDOT in preparing its response to the charge. Vega had no contact with Plaintiff about the 2019 Charge, or the matters involved in Plaintiff's internal complaint.  *Id.* **at 11**.  Vega had no other involvement in NMDOT's defense against the 2019 Charge. *Id.* **at ¶ 9.** Vega considered the matter closed after the HRB dismissed the 2019 Charge and had forgotten about it by 2022.  *Id.* **at ¶10.**

　　　　*a.  The October 2022 hiring process.*

In October 2022, NMDOT advertised an opening for the Management Analyst-Operational ("MA-O") position in NMDOT District Six's Construction Division.  *Id.* **at ¶12**.  The position provides support to the district's construction office, and involves several responsibilities:

> assisting the construction offices in completing monthly status reports of all construction projects, scheduling all project-manager meetings, attending all weekly project meeting and project inspections and sending out corresponding reports, and reviewing and distributing all documents for project suspensions and when construction projects reach substantial (and, later, physical) completion.

*Id.* **at ¶13**.

Hiring recommendations at NMDOT District Six are made by a selection panel based on candidates' applications, experience, qualifications, and interviews for the position.  *Id.* **at ¶14**. During the interview, which carries "substantial weight," candidates are asked the same set of questions regarding job-related scenarios intended to probe the candidate's abilities and the strength and relevance of their experience.  *Id.* **at ¶15**.

The hiring supervisor for the October 2022 advertisement of the MA-O position was Hasan Raza ("Raza"), the Assistant District Engineer ("ADE") for Construction in NMDOT District Six Raza had been with NMDOT since May 2022. *Id.* **at ¶18**.  The MA-O position fell within Raza's chain of command and would report to him.  *Id.* Raza assembled a selection panel of himself,

2

Valerie Nieto ("Nieto"), who had previously held the MA-O position, and Robert Darby ("Darby"), an Engineering Tech Supervisor III in NMDOT District Six's Construction Division. *Id.*

Three candidates were interviewed for the MA-O position on November 17, 2022, including Plaintiff and Traci Rodriguez ("Rodriguez"). *Id.* **at ¶16**. Plaintiff and Rodriguez both met the minimum qualifications for the position. *Id.* **at ¶17**.

Rodriguez's application demonstrated that she had relevant experience, including as an Engineering Technician II in the Construction Division. *Id.* **at 21**. According to the selection panel, Rodriguez had a strong interview. She presented herself as positive, organized, and professional. Rodriguez answered questions more thoroughly than Plaintiff. She was able to articulately navigate the various scenarios presented to her and to provide specific answers regarding the results of her experience. *Id.* **at ¶22**. The panelists felt she expressed knowledge of the connection between her auditing role and District Six's construction operations. Rodriguez's answers demonstrated insight into the MA-O role. *Id.*

Conversely, Plaintiff struggled in the interview. The panelists believed Plaintiff lacked professionalism and was negative in her answers. *Id.* **at ¶23**. In fact, her mobile phone rang at least twice during the interview. Plaintiff asked if she could answer one of the calls. *Id*. Although Plaintiff emphasized her brief experience in an MA-O role, she failed to demonstrate a depth of knowledge regarding the position. *Id.* In the end, the panel believed Rodriguez showed she would more easily transition into the MA-O role, and selected Rodriguez as their recommendation. *Id.* **at ¶24**. The panel indicated Plaintiff could be offered the position if Rodriguez declined. *Id.* **at ¶31**.

The 2019 Charge was not discussed by the selection panel. Darby and Nieto were unaware of the 2019 Charge. Darby and Nieto believed that Raza was also unaware as well. *Id* **at ¶¶26–27**.

3

Raza submitted two intra-departmental correspondences recommending Rodriguez for the position and providing justification for both her selection, and the decision not to select other candidates. *Id.* **at ¶¶29–30**. Vega had no role in the selection panel's recommendation of Rodriguez. Vega was responsible for approving or rejecting the recommendation made by the hiring panel. Rodriguez was offered and accepted the position.

     *b. The November 2022 hiring process.*

On November 28, 2022, Raza resigned. On the same day, Rodriguez resigned from the MA-O position after less than a month. *Id.* **at ¶33**. Because the MA-O was under the chain of command of the ADE for Construction, Vega believed the ADE should participate in filling the MA-O position. *Id.* **at ¶34**. After being unable to fill the ADE position by December, Vega readvertised the MA-O position,[1] despite Plaintiff having been recommended as the runner-up, and proceeded with the hiring process a second time without the ADE. *Id.* **at ¶¶35–37**. Stephanie Parra ("Parra"), who was the acting Engineering Technician Supervisor III, led the second selection panel. *Id.* **at ¶38**.

Two candidates were selected for interviews: Plaintiff and Robyn Eaves ("Eaves"). *Id.* **at ¶41**. Both met the minimum qualifications, and were interviewed by Parra, Nieto, and Darby. *Id.* **at ¶¶42–43.** Eaves had been employed with NMDOT since 2007 and worked in the Construction Division between 2013 and 2016. *Id.* **at ¶45.** Eaves demonstrated knowledge of activities that she would need to perform within the Construction Division, including auditing various aspects of construction projects, ensuring projects were properly funded and wages were being correctly paid, and working closely with project managers and project offices. *Id.* Eaves had a strong interview

---

[1] It is not unusual to readvertise a position when the desired candidate falls through and there is a small candidate pool for the position. *Id.* **at ¶39**.

in which she was "positive and confident in her answers," and able to demonstrate how her experience directly related to the MA-O position. *Id*. at ¶46.

Plaintiff, in the panel's perspective, struggled in the interview. She did not delve into particulars of the work to demonstrate actual knowledge of the position or an understanding of the interview scenarios. *Id.* at ¶47. In the panel's opinion, Plaintiff seemed unsure of how the MA-O position may have changed over the years. The panelists felt her answers lacked forward thinking on how her experience could advance the functions and performance of the position. *Id.* Because of this, the panel selected Eaves for the position. *Id.* at ¶48. At the time they recommended Eaves, the panel was neither aware of the 2019 Charge, nor had they discussed it in any way. *Id.* at ¶49. Eaves accepted the position. *Id.* at ¶51.

On March 9, 2023, Plaintiff filed a Charge of Discrimination with the HRB and the Federal Equal Employment Opportunity Commission ("EEOC") ("2023 Charge"). *Id.* at ¶52. Plaintiff alleged she was denied a promotion because of a claim she filed for racial discrimination in 2019 and for which a "Notice of No Probable Clause" was issued. *Id.* at ¶53.

*c. The instant litigation.*

On January 16, 2024, Plaintiff filed a lawsuit alleging violations of the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. and 42 U.S.C. § 1981. **Doc. 1**. Defendant subsequently filed this motion seeking summary judgment on October 3, 2024. **Doc. 26**. The Court received notice that New Mexico Supreme Court suspended Plaintiff's previous counsel on November 11, 2024. **Doc. 30**. The Court stayed proceedings for 60 days to allow Plaintiff to obtain new counsel, but she never did. **Doc. 31**. Plaintiff filed two Motions to Appoint Counsel, **docs. 32 and 34**, but the Court denied them because she had not demonstrated that she met the criteria. **Doc. 35**. The Court granted another 30-day stay to allow Plaintiff to obtain new

representation. *Id.* Ultimately, however, Plaintiff failed to file a timely Response to Defendant's Motion, despite being ordered to do so either by obtaining new counsel or proceeding *pro se*. **Doc. 35;** D.N.M.-LR 7.4 ("A response must be served and filed within fourteen (14) calendar days after service of the motion.").

In failing to respond, Plaintiff has thus made no showing of excusable neglect or good cause for the untimely Response, nor attempted to do so. *C.f. Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 896-97 (1990) (Under Rule 6(b), the court may, in its discretion and for good cause, accept late filings because the failure to file on time was a result of excusable neglect). Based on Plaintiff's lack of response to Defendant's Motion, the Court will take all facts contained in Defendant's Motion and properly supported in the record as admitted. *See* Fed. R. Civ. P. 56(c)(1)-(4); (e)(2) (when a party fails to properly address another party's assertion of fact as required by Rule 56(c), the court may consider the fact undisputed for purposes of the motion); *Reed v. Bennett,* 312 F.3d 1190, 1195 (10th Cir. 2002) ("By failing to file a response within the time specified by the local rule, the nonmoving party waives the right to respond or to controvert the facts asserted in the summary judgment motion."). The court should accept as true all material facts asserted and properly supported in the summary judgment motion.

However, "only if those facts entitle the moving party to judgment as a matter of law should the court grant summary judgment." *Reed*, 312 F.3d at 119. The Court must still therefore consider the validity of Defendant's Motion for Summary Judgment.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 330 (1986). "[T]he mere existence

of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). As the Tenth Circuit has explained, "mere assertions and conjecture are not enough to survive summary judgment." *York v. AT&T*, 95 F.3d 948, 955 (10th Cir. 1996).  To avoid summary judgment, a party "must produce specific facts showing that there remains a genuine issue for trial and evidence significantly probative as to any [material] fact claimed to be disputed." *Branson v. Price River Coal Co*., 853 F.2d 768, 771–72 (10th Cir. 1988) (quotation marks and citations omitted).

"A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented."  *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1306 (10th Cir. 2017) (quotation marks and citation omitted).

When making this determination, the Court keeps two principles in mind. First, while the Court must draw all "reasonable inferences … in the light most favorable to the non-moving party*," id*. at 1261, that party's "version of the facts must find support in the record," *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009). Second, the Court's role is not to weigh the evidence or decide any issues of credibility, but to assess the threshold issue of whether a genuine issue exists as to material facts requiring a trial. *See Liberty Lobby*, 477 U.S. at 249, 255.

## ANALYSIS

Plaintiff does not plead individual claims against Defendant but does assert that she is entitled to recover under both Title VII of the Civil Rights Act and under 42 U.S.C. § 1981.  The Court will therefore evaluate the undisputed facts as they pertain to a Title VII employment discrimination claim and a § 1981 right to contract claim.  The Court finds both claims to be

without merit—the record does not indicate discrimination, and the NMDOT enjoys Eleventh Amendment immunity from suit.

**I.** **The Court will grant summary judgment for Defendant as to Plaintiff's Title VII retaliation claim.**

Plaintiff's Title VII retaliation claim is meritless because Plaintiff fails to establish a *prima facie* case for retaliation or to demonstrate Defendant's reason for not hiring her was pretextual.

Title VII prohibits retaliation against an employee for opposing any practice made unlawful by Title VII or for asserting a charge, testifying, assisting or participating in any manner in an investigation, proceeding or hearing under Title VII. 42 U.S.C. § 2000e-3(a); *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1262 (10th Cir. 1998). A plaintiff bringing a retaliation claim "must establish that retaliation played a part in the employment decision and may choose to satisfy this burden in two ways." *Fye v. Okla. Corp. Comm'n,* 516 F.3d 1217, 1224–25 (10th Cir.2008). Under the direct or "mixed motives" approach, "the plaintiff may directly show that retaliatory animus played a 'motivating part' in the employment decision." *Id.* at 1225 (citation omitted). If the plaintiff can prove that retaliatory animus was a motivating factor, the burden shifts to the employer to demonstrate that it would have taken the same action irrespective of the retaliatory motive. *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 998 (10th Cir. 2011).

Conversely, if a plaintiff cannot directly establish retaliation as a motivating factor in the employment decision, they must rely on the *McDonnell Douglas* factors to prove retaliation indirectly. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). The plaintiff must first make out a prima facie case of retaliation by showing "(1) that [they] engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Twigg,* 659 F.3d at 998 (quoting *Somoza v. Univ. of Denver,*

513 F.3d 1206, 1212 (10th Cir. 2008) (internal quotation marks omitted). If the plaintiff establishes a prima facie case, the employer must then offer a legitimate, nonretaliatory reason for its decision. *Id*. Finally, once the employer has satisfied this burden of production, the plaintiff must show that the employer's reason is merely a pretext for retaliation. *Id.*

Plaintiff has offered no direct evidence of retaliation, and the record does not indicate that any exists.  The Court will therefore proceed under the *McDonnell Douglas* factors.

> a.  *Plaintiff has not demonstrated a prima facie case under the <u>McDonnell Douglas</u> factors because she has not established a causal connection.*

Plaintiff can satisfy the first two factors in establishing a *prima facie* case of retaliation, and Defendant concedes as such.  **Doc. 26 at 13**.  First, she engaged in a protected employment activity: she filed the 2019 Charge alleging discrimination with the ERB and HRB.  **Doc. 26-2**; *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir. 1999) ("By filing an EEOC claim, Plaintiff engaged in protected activity.").  Second, a reasonable person would have found not getting the MA-O position, despite interviewing twice for it, to be materially adverse.  *Twigg,* 659 F.3d at 998.  However, it is at the third stage of the test that Plaintiff falters. Plaintiff has not demonstrated a meaningful causal connection between the 2019 Charge and Defendant's decision to not hire her for the MA-O position.

Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action.  *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352, (2013).  A court may infer a retaliatory motive when an adverse action closely follows protected activity.  *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (citing *Chavez v. City of Arvada,* 88 F.3d 861, 866 (10th Cir. 1996)). However, "unless the termination is *very closely* connected in time to the protected activity, the plaintiff must rely on additional evidence

beyond temporal proximity to establish causation." *Conner v. Schnuck Markets, Inc.,* 121 F.3d 1390, 1395 (10th Cir.1997) (emphasis in original).

Plaintiff is not entitled to a presumption of causality based on timing alone.  Four years had elapsed between the 2019 Charge and Vega's decision to readvertise the MA-O position, and three years had passed since the charge had been resolved in Defendant's favor.  *Compare Anderson*, 181 F.3d at 1179 (a three-month period, standing alone, is insufficient to establish causation) *with Love v. RE/MAX of Am., Inc.*, 738 F.2d 383, 386 (10th Cir. 1984) (a two-hour gap between protected conduct and adverse employment action was sufficient to satisfy the causation prong of the prima facie case).  This is not the kind of "close" temporal relationship the Tenth Circuit has held gives rise to an inference of retaliation.  *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1181 (10th Cir. 2006); *see also Fulkerson v. Colvin*, No. 16-CV-889-BRB-KBM, 2018 WL 1726245, at *5 (D.N.M. Apr. 6, 2018) ("A causal connection may be shown by 'evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.'").  "[P]laintiff cannot rely on temporal proximity alone and must come forward with additional evidence."  *Hinds v. Sprint/United Management Co.*, 523 F.3d 1187 1204 (10th Cir. 2008).

Plaintiff has not provided such additional evidence.  A plaintiff seeking to establish causation must demonstrate that the decisionmakers acted out of a desire to retaliate for formal discrimination complaints.  *Singh v. Cordle*, 936 F.3d 1022, 1043 (10th Cir. 2019) (citing *Hinds*, 523 F.3d at 1203).  The decisionmakers must thus have had knowledge of the formal complaints.  *Id.*  However, there is no evidence that four of the members of the hiring panels – Darby, Nieto, Parra, or Raza—knew about the 2019 Charge or any other discrimination complaints Plaintiff may have made.  **Doc. 26-8 at ¶18** (Declaration of Nieto); **Doc. 26-9 at ¶20** (Declaration of Darby);

**Doc. 26-10 at ¶13** (Declaration of Parra)**; Doc. 26 at ¶27**.  The record indicates that neither selection panel knew of or discussed the 2019 Charge or other complaints of discrimination. Without evidence demonstrating the panel members knew of Plaintiff's protected activity, Plaintiff cannot show they retaliated against her because of it. *Singh*, 936 F.3d at 1043; *Conner,* 121 F.3d at 1395 ("Plaintiff must present other evidence—more than mere speculation, conjecture, or surmise—to establish that [their] protected activity was a but-for cause of the adverse employment action.") (internal quotation omitted); *Maxwell v. Whitley*, 553 F. Supp. 3d 927, 944 (D.N.M. 2021) ("Simply put, absent substantive evidence, Plaintiff's alleged factual disputes and conjecture do not meet the burden to show retaliation.").

The only person involved in the hiring process with knowledge of the 2019 Charge was Vega, but knowledge alone is insufficient to establish causation.  *Meznick v. Gen. Elec. Co.*, 950 F.2d 816, 828 (1st Cir. 1991) ("[K]nowledge on an employer's part, without more, cannot itself be sufficient to take a retaliation case to the jury."); *Fulkerson*, 2018 WL 1726245 at *5 ("[M]ere knowledge of prior EEO activity is insufficient to show causation because it does not justify an inference of retaliatory motive.").  Vega's declaration indicates that the 2019 Charge did involve allegations against her in her then-capacity as ADE for Construction.  **Doc. 26-1 at 1**.  She participated in preparing the response to the charge but had no other involvement in the defense. *Id.* **at 2**.  However, the record also indicates that Vega considered the 2019 Charge to be closed once HRB resolved the charge in December 2019, and had forgotten about the 2019 Charge, which could be expected, given the long timeline between the 2019 Charge and the hiring process for the MA-O position.  *Id.* Vega had no role in the first hiring panel's decision to hire Rodriguez over Plaintiff.  Vega only approved the panel's selection, and the record does not indicate Vega influenced or attempted to influence the panel.  *Id.*  Plaintiff had no contact with Vega about the

2019 Charge.  **Doc. 26-3 at 101-18–102-8.**  And indeed, Plaintiff has stated she was not sure that it was Vega who was retaliating against her, only that a supervisor in some capacity had retaliated against her.  ***Id.* at 102-23 – 103-8** ("Maybe it wasn't [Vega] specifically, maybe it was Larry Maynard after I complained to him about Jayson, maybe it was all of them. I can't specifically name one person.").  In considering the first hiring process, the record does not "present evidence of circumstances that justify an inference of retaliatory motive." *Williams v. W.D. Sports, N.M., Inc.,* 497 F.3d 1079, 1091 (10th Cir.2007) (internal quotations omitted).  Rather, it indicates only speculative reasons to infer that Vega *might* have had a retaliatory motive but that she had essentially no role in the selection process beyond approving the panel's independent selection. *Conner,* 121 F.3d at 1395 ("Plaintiff must present . . . more than mere speculation, conjecture, or surmise—to establish that [their] protected activity was a but-for cause of the adverse employment action.")

Regarding the second hiring process, Plaintiff alleges that the decision to readvertise the MA-O position rather than offering it to her was retaliation for the 2019 Charge.  **Doc. 1 at ¶11.** Rodriguez, who had been with NMDOT in the MA-O position for less than a month, resigned abruptly on the same day Raza resigned.  **Doc. 26-13** (Resignation of Raza); **Doc. 26-14** (Resignation of Rodriguez).  Vega chose to readvertise the position instead of offering it to Plaintiff.  **Doc. 26-15** (Second MA-O advertisement); **Doc. 26-12 at 1** ("Panel did feel that if Traci declines the position, [Plaintiff] can be offered the position.").  The record indicates Vega chose to readvertise the position to allow Raza's replacement to participate in the selection process, as the MA-O would be in the replacement's chain of command. **Doc. 26-1 at 3**.  However, Vega once again had no say in the hiring process, or the decision to not select Plaintiff for the MA-O position or as an alternate for the position. The second hiring process once again does not involve the kind

of evidence that justifies an inference of retaliatory motive. *Ward*, 772 F.3d at 1203. The record is insufficient to infer discriminatory animus. *Maxwell*, 533 F. Supp. 3d at 944.

The record fails to establish a non-speculative or non-conjectural indication that the 2019 Charge caused Plaintiff's adverse employment action. *Conner*, 121 F.3d at 1395. Plaintiff thus has not carried her burden in establishing a *prima facie* case under *McDonnell Douglas*. The Court could grant summary judgment on these grounds alone. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) ("The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of [retaliation].").

### b. *Defendant has demonstrated a valid, non-discriminatory reason for not hiring Plaintiff.*

Even if Plaintiff had satisfied the *prima facie* case for retaliation, Defendant can present a legitimate non-discriminatory case for not hiring Plaintiff.

If Plaintiff has alleged a *prima facie* case of retaliation, the burden shifts to Defendant to show that the action was taken for a legitimate, non-discriminatory reason. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). This burden is one of production, not persuasion. *Carter v. Pathfinder Energy Services, Inc.,* 662 F.3d 1134, 1149 (10th Cir. 2011) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)). The burden is, therefore, "exceedingly light." *Anaeme v. Diagnostek, Inc*., 164 F.3d 1275, 1279 (10th Cir. 1999) (citation omitted). "The relevant inquiry is not whether [Defendant's] proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs." *Lobato v. New Mexico Env't Dep't*, 733 F.3d 1283, 1289 (10th Cir. 2013) (cleaned up).

The adverse employment action can reasonably be split into three parts: the decision not to hire Plaintiff the first time, the decision to readvertise the MA-O position, and the decision to not

offer Plaintiff the MA-O position the second time. Defendant has offered legitimate, non-discriminatory reasons in good faith for each stage of the process.

First, the hiring committee had several legitimate reasons for not offering Plaintiff the MA-O position. NMDOT has repeatedly contended that the interview carries substantial weight in the hiring process. **Doc. 26-9 at ¶4; Doc. 26-10 at ¶6**. Plaintiff had a weak interview during the first hiring process. The panelists found that Plaintiff lacked professionalism. While Plaintiff had brief experience as an MA-O, she did not demonstrate a depth of knowledge regarding the position. **Doc. 26-9 at ¶12**. Moreover, Rodriguez had a stronger interview, more recent experience and could offer responses more relevant to the position. **Doc. 26-12**. In the end, the panel did not believe Plaintiff was the best candidate for the position based on her interview and hired someone else. But the decision to go with a different candidate is not itself an illegal act. Defendant has offered several legitimate, nondiscriminatory reasons for their decision to hire Rodriguez. The record as to the first hiring process is not filled with "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Jones v. Eaton Corp.*, 42 F. App'x 201, 208 (10th Cir. 2002) (quoting *Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323 (10th Cir.1997) (quotation omitted)).

Second, as discussed *supra*, Vega demonstrated a legitimate, good faith reason for readvertising the position. Rodriguez resigned abruptly on the same day Raza resigned. **Doc. 26-13** (Resignation of Mr. Raza); **Doc. 26-14** (Resignation of Rodriguez). And it is true that Vega readvertised the position instead of offering it to Plaintiff. **Doc. 26-15** (Second MA-O advertisement); **Doc. 26-12 at 1** ("Panel did feel that If Traci declines the position, [Plaintiff] can be offered the position."). However, the record indicates that Vega chose to readvertise the

position because Raza's replacement and the MA-O would be in the same chain of command. **Doc. 26-1 at 3**. Vega felt it necessary to involve the MA-O's new supervisor, even though NMDOT eventually had to pursue the MA-O hiring process without the ADE replacement due to a lack of applications. *Id.* **at ¶18**. This reason is neither illegal nor "so weak, implausible, inconsistent or incoherent that a reasonable fact finder could conclude that it was not an honestly held belief but rather was subterfuge for discrimination." *Young v. Dillon Cos.*, 468 F.3d 1243, 1250 (10th Cir. 2006).

Finally, the hiring committee had several legitimate reasons for not offering Plaintiff the MA-O position the second time. The second hiring committee believed that another candidate—Eaves—had outperformed Plaintiff in the interview process. **Doc. 26-8 at ¶ 16; Doc. 26-9 at ¶ 18; Doc. 26-10 at ¶ 8**. While Plaintiff had a better interview than the first hiring process, she did not delve into particulars of the work to demonstrate her actual knowledge of the position or show that she understood the scenarios in the interview questions. **Doc. 26-9 at ¶ 18; Doc. 26-10 at ¶ 9**. She did not indicate an understanding of changes in the MA-O position. **Doc. 26-10 at ¶10**. Eaves, on the other hand, had a stronger interview than Plaintiff. The panelists believed Eaves explained how her experience would qualify her for the MA-O position, and they believed she provided examples in her responses that demonstrated her knowledge of the issues presented in, and the intent behind, the interview questions. **Doc. 26-8 at ¶16; Doc. 26-9 at ¶18; Doc. 26-10 at ¶8**. Given the low bar a defendant must surmount at this stage, Defendant's reason for not hiring Plaintiff is not one that "a reasonable factfinder could rationally find. . . unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Pinkerton*, 563 F.3d at 1065. Defendant bears an "exceedingly light" burden and has satisfied that burden. *Anaeme*, 164 F.3d at 1279.

Ultimately, "[t]he evidence overwhelmingly supports Defendant's proffered reason and Plaintiff presents nothing which would cause a reasonable finder of fact to determine that the reason is unworthy of belief." *Anderson*, 181 F.3d at 1180.  Assuming Plaintiff could have presented a *prima facie* case, Defendant has satisfied their burden at the second stage, and Plaintiff must thus provide evidence of pretext to survive summary judgment.

### c.  *Plaintiff has not offered evidence of pretext.*

Finally, because Defendant has offered a legitimate non-discriminatory reason for not hiring Plaintiff, the burden shifts to her to demonstrate that the reason is pretextual.  Plaintiff has failed to do so.

Once a defendant offers a legitimate, nondiscriminatory reason for the adverse employment action, the burden shifts back to the plaintiff to demonstrate that the reason was merely pretext for retaliation.  *Twigg,* 659 F.3d at 998.  "[A] plaintiff can show pretext by revealing 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Jones*, 42 F. App'x at 208 (citing *Morgan.,* 108 F.3d at 1323 (quotation omitted)); *see also Johnson v. Weld Cnty., Colo.*, 594 F.3d 1202, 1211 (10th Cir. 2010) ("Under our precedents, a plaintiff can establish pretext by showing the defendant's proffered non-discriminatory explanations for its actions are so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude [they are] unworthy of belief." (internal quotations omitted)). It is not the Court's job to "to act as a 'super personnel department' to undo bad employment decisions; instead, it charges [the Court] to serve as a vital means for redressing discriminatory ones." *Johnson*, 594 F.3d at 1211.  Where an employer simply 'gets it wrong' while acting in good faith, the employer has not acted with prohibited pretext. *Id.*

Plaintiff failed to respond to Defendant's Motion for Summary Judgment and thus offers no evidence of pretext. Her Complaint offers repeated, unsupported assertions that she was the most qualified candidate for the job. ***See generally*** **Doc. 1**. An overwhelming disparity in qualifications between the plaintiff and the hired candidate can demonstrate pretext. *Johnson*, 594 F.3d at 1211 (A plaintiff must come forward with facts showing an "overwhelming" "disparity in qualifications."). However, the discrepancy must be "overwhelming," and Plaintiff needed to make the showing of pretext "by reference to affidavits, deposition transcripts, or specific exhibits." *Id.*; *Jones*, 42 F. App'x at 208. Unsupported assertions, on the other hand, are insufficient to defeat summary judgment. *Id.*

The record indicates that Plaintiff was similarly qualified to the two candidates Defendant ultimately hired. **Doc. 26-1 at ¶¶15, 25; Doc. 26-8 at ¶5; Doc. 26-10 at ¶4**. All three candidates met the minimum qualifications and had relevant experience. **Doc. 26-1 at ¶¶15, 25; Doc. 26-8 at ¶5; Doc. 26-10 at ¶4**. The decision to not hire Plaintiff over the other two candidates at most would amount to a wrong hiring decision or poor business judgment, not discriminatory animus. *Wise v. DeJoy*, 71 F.4th 744, 752 (10th Cir. 2023); *see also Johnson*, 594 F.3d at 1211 (wrong decision); *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1169–70 (10th Cir. 2007) (poor business judgment). Ultimately, Plaintiff's qualifications were not so drastically different as to warrant finding pretext, particularly where she offers the Court no evidence on which to base that finding. The Court will not find that Defendant's good faith reason was pretextual.

Because Plaintiff's case fails at every stage of a Title VII *McDonnell Douglas* inquiry, the Court will grant Defendant's motion for summary judgment as to Count I.

II.   **The Court will grant Defendant's motion for summary judgment as to Plaintiff's Section 1981 claim.**

The Court will also grant summary judgment for Defendant as to Count II because Plaintiff's § 1981 claim is improperly pled, does not allege retaliation for racial discrimination, and because Defendant enjoys Eleventh Amendment immunity from suit.

42 U.S.C. § 1981 in relevant part ensures that parties shall not be deprived of the right to "make and enforce contracts" on the basis of race or because of opposition to racial discrimination. 42 U.S.C. § 1981; *Parker Excavating, Inc. v. Lafarge W., Inc.*, 863 F.3d 1213, 1220 (10th Cir. 2017) (Section 1981 "prohibits not only racial discrimination but also retaliation against those who oppose it."). "When courts consider § 1981 retaliation claims, 'the principles set forth in Title VII retaliation cases apply with equal force[.]'" *Parker Excavating, Inc.*, 863 F.3d at 1220 (citation omitted). Thus, absent direct evidence of retaliation, a court evaluates a plaintiff's properly pled § 1981 retaliation claim under the *McDonnell Douglas* burden-shifting framework. *Id.*

Importantly distinguishing a §1981 claim from a Title VII requirement is that § 1981 requires that a plaintiff have specifically opposed *race-based* discrimination. *Salemi v. Colorado Pub. Employees' Ret. Ass'n*, 747 F. App'x 675, 697 (10th Cir. 2018) (citing *Skinner v. Total Petroleum, Inc.*, 859 F.2d 1439, 1447 (10th Cir. 1988) (per curiam) (holding that claim is only cognizable under § 1981 if it involves a "racial situation"), *superseded by statute on other grounds*). Moreover, the employer must have knowledge that the opposition at issue involved allegations of race-based discrimination. *Lindsay v. Denver Pub. Sch.*, 88 F.4th 1323, 1327–28 (10th Cir. 2023) ("After all, 'an employer cannot engage in unlawful retaliation if it does not know that the employee has opposed or is opposing a violation of [the antidiscrimination statute].'" (citation omitted, edits in original)).

a.  *Plaintiff's § 1981 claim does involve allege racial discrimination*

Even if properly pled, Plaintiff's retaliation claim under § 1981 stems from the same set of facts as her Title VII claim.  **Doc. 1 at ¶¶15, 17**.  As discussed above, Plaintiff cannot satisfy a *prima facie* case for retaliation under *McDonnell Douglas* based on the facts in the record.  *See* Section I.  The Court could grant summary judgment on that ground alone.

However, more importantly, Plaintiff's 2019 Charge did not involve allegations of racial discrimination.  On both the HRB's "Charge of Discrimination" form and the NMDOT internal complaint form, Plaintiff indicated that she was alleging discrimination on the basis of age, disability, and retaliation.  **Doc. 26-1** (NMDOT Internal Complaint)**; Doc. 26-4** (HRB Charge of Discrimination).  Nowhere in her narrative sections does she allege racial discrimination.  **Doc. 26-1; Doc. 26-4**. Moreover, while Plaintiff testified in her deposition that she felt she was facing racial discrimination, she also admitted that she never told anyone.  **Doc. 36-1 at 44-11 to 53-16** (discussing Plaintiff's failure to inform anyone about racial elements underlying the 2019 Charge).  No one at any stage of the complaint process had knowledge that Plaintiff was opposing racial discrimination.  *Salemi*, 747 F. App'x at 697 ("§ 1981 protects against only discrimination based on race."); *Lindsay*, 88 F.4th at 1327–28 ("[A]n employer cannot engage in unlawful retaliation if it does not know that the employee has opposed or is opposing a violation of [the antidiscrimination statute].").  Plaintiff cannot bring a § 1981 claim for retaliation where she did not oppose racial discrimination or where her employer had no knowledge of potential race-based elements in the underlying conduct.

> *b.  Defendant is a state entity that enjoys Eleventh Amendment immunity.*

Finally, Defendant is also immune from suit arising from §1981 as an agency of the state of New Mexico.

A cause of action for damages under 42 U.S.C. § 1983 "constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units[.]" *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989).[2]  As a result, defenses available to state entities under §1983 are also available for § 1981 claims, including a state's sovereign immunity under the Eleventh Amendment.  *Re v. Vistas*, 173 F.3d 864 (10th Cir. 1999) (unpublished) ("Congress did not abrogate Eleventh Amendment immunity when it enacted 42 U.S.C. §§ 1981 or 1983."); *Patillo v. Larned State Hosp.*, 462 F. App'x 780, 783 (10th Cir. 2012) (upholding dismissal where state entities "were immune from suit under the Eleventh Amendment and that this immunity had not been abrogated or waived in connection with §§ 1981, 1983, 1985, or 1986.").

 "[I]n the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment. . . regardless of the nature of the relief sought." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Plaintiff offers no case law or statute indicating that NMDOT, as an agency of New Mexico, has somehow escaped the shelter of the Eleventh Amendment.  And certainly, Defendant has not waived this defense: they raise it in their Answer and in their Motion for Summary Judgment. **Doc. 5 at 6**; **Doc. 26 at 26**.  The Court therefore finds that Defendant has not consented to suit and thus enjoys Eleventh Amendment immunity from Plaintiff's § 1981 claim.  The Court will again grant summary judgment for Defendant as to Count II.

### III.  **The Court will deny Plaintiff's Motion to Reconsider and for a Settlement Conference.**

---

[2] Count II is also improperly pled.  Plaintiff pled Count II as a standalone § 1981 claim, rather than a claim pursuant to 42 U.S.C. § 1983.  The Tenth Circuit has upheld dismissals on this ground alone.  *E.g.*, *Brown v. Keyston Learning Servs.*, 804 F. App'x 873, 882–83 (10th Cir. 2020) (unpublished) (affirming district court dismissal of § 1981 claim against a State actor based on plaintiff's failure to plead the claim under § 1983).

Finally, the Court will deny Doc. 36, Plaintiff's Letter and Motion for Settlement Conference to the extent that it can be construed as a request for the Court to reconsider its denial of Plaintiff's previous requests to appoint counsel.

Plaintiff filed a letter with the Court in which she addresses the Court's Memorandum Opinion and Order Denying Plaintiff's Motion to Appoint Counsel.  **Doc. 36** (letter); **Doc. 35** (Order).  "[E]very order short of a final decree is subject to reopening at the discretion of the district judge." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 12, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). The Court has discretion to reconsider an interlocutory order and its discretion is not cabined by the standards that apply to Fed. R. Civ. P. 59 and 60 motions. The Court also has discretion in deciding what standard to apply to reconsideration of an interlocutory order. *Ankeney v. Zavaras*, 524 Fed. Appx. 454, 458 (10th Cir. 2013).  To the extent that this can be construed as a motion to reconsider, the Court in its discretion will deny reconsideration of its decision to deny Plaintiff's request for counsel.

"A plaintiff asserting an employment discrimination claim has no constitutional or statutory right to appointed counsel." *Castner v. Colo. Springs Cablevision*, 979 F.2d 1417, 1420 (10th Cir. 1992) (citation omitted). "Title VII of the Civil Rights Act of 1964, however, provides that the district court may, in its discretion, appoint counsel for a plaintiff in an employment discrimination action." Id. (citing 42 U.S.C. § 2000e-5(f)(1)). The Court has "extremely broad" discretion to decide whether to appoint counsel. *Castner*, 979 F.2d at 1420. "Before counsel may be appointed, a plaintiff must make affirmative showings of (1) financial inability to pay for counsel, (2) diligence in attempting to secure counsel[,] and (3) meritorious allegations of discrimination." *Id.* at 1421. "[A] plaintiff's capacity to present the case without counsel . . . should be considered in close cases as an aid in exercising discretion." "The decision whether to appoint

counsel requires accommodation of two competing considerations." *Castner*, 979 F.2d at 1421. On one hand, courts must consider that "Title VII claimants might not be able to take advantage of the federal remedy without appointed counsel" because complainants are often "member[s] of a disadvantaged class" and are "opposed by an employer who not infrequently is one of the nation's major producers." *Id*. As a result, courts "courts must give 'serious consideration' to a plaintiff's request for appointment counsel in a Title VII action." Id. (citations omitted). On the other hand, "court[s] must keep in mind that Congress has not provided any mechanism for compensating such appointed counsel." *Id*. "The indiscriminate appointment of volunteer counsel to undeserving claims will waste a precious resource and may discourage attorneys from donating their time." *Id*.

As set forth in the Court's previous order, Plaintiff has still not presented circumstances justifying appointing counsel.

First, Plaintiff has not affirmatively demonstrated a financial inability to pay. She does not refute that she is still employed with the NMDOT, nor has she demonstrated beyond a single conclusory allegation that she does not have the financial ability to continue to pursue this litigation. The Court does accept Plaintiff's assertions that she has acted with diligence in seeking new counsel, but that is insufficient alone to grant a motion for reconsideration.

Additionally, for the reasons discussed above, Plaintiff's claim is not meritorious, and she offers no additional facts to support her claim beyond her original speculative complaint. **Doc. 1**. Instead, she only asks the Court if it has read her deposition and employment file. **Doc. 36**. To the extent the record is available to the Court, it has reviewed the record in full and finds Plaintiff's claim to still be without merit. Moreover, Plaintiff does not demonstrate, nor is the Court given a reason to believe, that she is incapable of presenting the case without counsel.

To the extent Doc. 36 should be construed as a Motion to Reconsider, the Court denies Plaintiff's request.   To the extent that Doc. 36 is a motion for a settlement conference, the Honorable Jennifer Rozzoni has denied that request as without merit as well.  **Doc. 37**.

## CONCLUSION

Defendant's Motion for Summary Judgment (**Doc. 26**) is **GRANTED**. All claims against Defendant are **dismissed.**

   **IT IS SO ORDERED.**

          _/S/_____

          KEA W. RIGGS

          UNITED STATES DISTRICT JUDGE